DAVID BROWNBURG, f/k/a HENRY KNOELK, and SANDRA KNOELK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brownburg
Docket No. 8311-89
United States Tax Court
T.C. Memo 1993-6; 1993 Tax Ct. Memo LEXIS 7; 65 T.C.M. (CCH) 1709; January 6, 1993, Filed *7 Decision will be entered under Rule 155. David Brownburg, pro se. For Respondent: Lynn M. Brimer. PARKER PARKER MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the taxable year 1986 in the amount of $ 1,872. By amendment to answer, respondent subsequently asserted a fraud addition under section 6653(b). The fraud addition was based in part on the omission of an item of W-2 wage income, and respondent seeks an increase in the deficiency with the amount to be determined in further proceedings under Rule 155. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year before the Court, and all Rule references are to the Tax Court Rules of Practice and Procedure. The issues for decision are: 1. Whether $ 5,094.90 of purported wage income from General Devices, Inc. to petitioner David Brownburg was properly includable in petitioners' gross income in 1986. We hold that he received the income and it was includable in gross income for the year. 2. Whether petitioners were entitled to deductions for employee business expenses in the amount of $ 13,555.74. *8 We hold that most of those expenditures constituted nondeductible personal, living, or family expenses under section 262 rather than deductible "away from home" traveling expenses under section 162(a)(2). As to the balance of such expenditures, petitioners failed to substantiate any amount of business mileage. 3. Whether petitioners were entitled to itemized Schedule A deductions in the amount of $ 3,426.61 or any other amount. We hold that they were not. 4. Whether all or part of the underpayment of tax was due to fraud on the part of petitioners within the meaning of section 6653(b). We hold that the underpayment of tax was due to fraud on the part of petitioner David Brownburg, but that there was no fraud on the part of petitioner Sandra Knoelk. FINDINGS OF FACT Some of the facts have been deemed stipulated by order of the Court and are so found. Petitioners David Brownburg, f/k/a Henry Knoelk, and Sandra Knoelk are husband and wife. At the time they filed their petition in this Court, their residence was in Anchorville, Michigan. The term "petitioner" in the singular will hereinafter refer to petitioner David Brownburg. Petitioner is an engineer with a Bachelor of *9 Science degree in electrical engineering from Florida State Christian College. His spouse, petitioner Sandra Knoelk (hereinafter Mrs. Knoelk), is a homemaker who is not employed outside of the home. On September 21, 1985, petitioner leased a house located at 9926 Spruce Ridge, Converse, Texas (the Converse, Texas, house or the Stokes' Converse, Texas, house), from the owners, Colonel Richard W. Stokes, Jr. and his wife. Petitioner paid rent for the Converse, Texas, house only for one month, through October 21, 1985. On November 4, 1985, Mrs. Knoelk telephoned Colonel Stokes by a collect call to inform him that she and petitioner no longer lived in the Converse, Texas, house, and that he could apply their deposit to the unpaid rent. Colonel and Mrs. Stokes then cleaned up the house and advertised it for rent. They rented the Converse, Texas, house to John N. Schackelford on December 30, 1985, for a period of one year. From November 19, 1985 through January 31, 1986, petitioner was employed as an engineer by General Devices, Inc. General Devices, Inc. issued a Form W-2 to petitioner for his 1986 wage income in the amount of $ 5,094.90. That wage income of $ 5,094.90 was not *10 reported on the Form 1040, U. S. Individual Income Tax Return, for 1986, that petitioner prepared for himself and Mrs. Knoelk. On January 27, 1986, petitioner had executed a Form W-4, Employee's Withholding Allowance Certificate, in connection with his employment at General Devices, Inc. On that Form W-4 petitioner claimed exempt status, certifying under penalties of perjury that in the prior year (1985) he "did not owe any Federal income tax and had a right to a full refund of ALL income tax withheld". That statement was false. [1]
*11 During 1986, petitioner was also employed as an engineer by ARCO Service Corporation of Livonia, Michigan, from March 11, 1986 through April 18, 1986. On March 5, 1986, petitioner executed another Form W-4 in connection with that employment on which he again claimed to be exempt from Federal income tax. From April 22, 1986 through July 13, 1986, petitioner was employed as an engineer by Delta-T Engineering of Novi, Michigan. Again, in connection with this employment, he executed another Form W-4 claiming to be exempt from Federal income tax. As a result of the various Forms W-4, no Federal income tax was withheld from petitioner's wages in 1986. During 1986, petitioner, either alone or with his wife and at least one of his three children, [2] lived in various motel rooms or motel apartment- units. Petitioner and Mrs. Knoelk did not live in the Stokes' Converse, Texas, house at any time during 1986. [3] During January of 1986, while petitioner was still employed by General Devices, Inc., petitioner, Mrs. Knoelk, and one or more of their children lived in the South Oaks Inn, in Fort Worth, Texas. Thereafter, they lived in Michigan. During his employment with ARCO Service Corporation *12 and Delta-T Engineering in 1986, petitioner, Mrs. Knoelk, and one or more of their children lived at Knights Inn in Madison Heights, Michigan. Petitioner and Mrs. Knoelk did not own a house during the relevant periods *13 in 1986. They did not pay any rent or incur any other expenses in connection with the Stokes' Converse, Texas, house in 1986. Other than the various motel rooms or motel apartment-units occupied by petitioner, Mrs. Knoelk, and one or more of their children, petitioner and Mrs. Knoelk did not incur any other rental or mortgage-payment expenses during the relevant periods in 1986. They did not incur any duplicate (i.e., "away from home") lodging and meal expenses during the relevant periods of that year. Petitioner prepared the Form 1040, U. S. Individual Income Tax Return, for himself and Mrs. Knoelk for the taxable year 1986. On that return, he reported his W-2 wage income from ARCO Service Corporation and from Delta-T Engineering. He did not report the W-2 wage income in the amount of $ 5,094.90 that he received from General Devices, Inc. for that year. On a Form 2106, Employee Business Expenses, petitioner claimed a total deduction of $ 13,555.74. Of that amount $ 12,656.52 was listed for "Travel expenses while away from home overnight including meals, lodging, airplane, car rental, taxi, etc.", and $ 899.22 was listed for total business mileage. The "away from home" travel *14 expenses were for meals and lodging at the various motels where petitioner and Mrs. Knoelk and one or more of their children lived during the relevant periods of 1986. Petitioner and Mrs. Knoelk had no other residence or home during the relevant periods of that year, and did not incur any duplicate expenses for housing. There is no evidence in the record to substantiate the amount of the business mileage, if any, for which petitioner might be entitled to a deduction as employee business expense in 1986. The "Weekly Expense Report" that petitioner sometimes filled out was prepared for his own personal purposes and was never submitted to any employer or otherwise verified by anyone. Those reports sometimes listed his "territory" as North Texas and later as Michigan, and listed his alleged "Base" as "Converse, South Texas". The record does not establish that petitioner had any connection, business or personal, with Converse, Texas, during 1986. On the Schedule A attached to the Form 1040 for the taxable year 1986, petitioner listed two itemized deductions -- State and local income taxes of $ 228.39 and tax return copy expense of $ 15, for a total of $ 243.39. However, petitioner *15 deducted a total of $ 3,426.61 as Schedule A itemized deductions. Petitioner improperly subtracted his itemized deductions from the "Zero bracket amount" and claimed the balance as a deduction. [4]
*16 ULTIMATE FINDINGS OF FACT 1. Petitioner David Brownburg was an itinerant worker without any "tax home" in 1986 and was not "away from home" when he incurred the claimed employee business expenses for meals and lodging. 2. Petitioner David Brownburg's claimed employee business expenses for meals and lodging were nondeductible personal, living, or family expenses. 3. Petitioner David Brownburg failed to report part of his income for 1986. 4. The resulting underpayment of tax for the taxable year 1986 was due to fraud on the part of petitioner David Brownburg. There was no fraud on the part of petitioner Sandra Knoelk. OPINION This is a fraud case with the normal split burden of proof. The taxpayers must prove by a preponderance of the evidence any errors in the deficiency determination in the deficiency notice, but respondent has the burden with respect to the increased deficiency. Rule 142(a). Respondent must also prove the elements of fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b); , affg. ; , *17 affg. . Petitioners deducted employee business expense in the total amount of $ 13,555.74, of which $ 12,656.52 was for "away from home" traveling expenses. Section 162(a) allows a deduction for ordinary and necessary employee business expenses paid during the taxable year, including (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; * * *
Normally a person's meals and lodging are purely personal, living, or family expenses that are nondeductible. Sec. 262. To come within the traveling expenses exception of section 162(a)(2), the expenses must be (1) reasonable and necessary, (2) incurred "while away from home", and (3) incurred in the pursuit of a trade or business (including the business of being an employee). . The word "home" as used in section 162(a)(2) means "tax home", i.e., the general vicinity of the taxpayer's principal place of business or employment rather than the location of his *18 personal residence, if the two are not the same. , affg. ; . The purpose of the "away from home" provision is to mitigate the burden of the taxpayer, who, because of the exigencies of the job, must maintain two places of abode and thereby incur additional and duplicate living expenses. . The striking fact in the instant case is that petitioner David Brownburg did not maintain two abodes and admittedly did not incur any additional or duplicate living expenses. The lodging in the various motel rooms or motel apartment-units in which he and his family lived during 1986 was the only abode, residence, or "home" he had. The facts in this case clearly bring petitioner David Brownburg within the category of an itinerant worker who has no home to be away from for purposes of section 162(a)(2). There is a long, well-established line of cases holding that no deduction for "away from home" expenses is allowable *19 for such itinerant workers who carry their tax home with them wherever they happen to be working. ; ; , affg. ; ; ; ; ; ; , affd. ; . In other words, the expenditures petitioner incurred and claimed as employee business expenses were simply his personal, living, or family expenses that are nondeductible under section 262. *20 As to the remaining $ 899.22 claimed for business mileage, petitioner David Brownburg failed to provide any substantiation for this item. As to the error in the Schedule A itemized deductions, petitioner has never addressed this obvious error, even after the Court pointed it out to him. Throughout the audit petitioner continued to insist that the tax return as filed was correct in every respect; throughout the trial he addressed his dispute with the landlords of the Converse, Texas, house rather than the tax issues in this case. See supra note 3. Petitioners have not carried their burden of proof as to any error in the original deficiency determination. Respondent has proved that petitioner David Brownburg was employed by General Devices, Inc. through January 31, 1986, and received W-2 wage income in the amount of $ 5,094.90 that was not reported on petitioners' tax return for that year. As stated at the outset, respondent must prove fraud by clear and convincing evidence. The two elements of fraud under section 6653(b) (now sec. 6663(a)) are (1) the existence of an underpayment of tax, and (2) that some part of the underpayment was due to fraud. . *21 Fraud is actual, intentional wrongdoing, and the intent is the specific purpose to evade a tax believed to be owing. ; , cert. denied . Respondent must show that the taxpayer intended to evade taxes by conduct calculated to conceal, mislead, or otherwise prevent the collection of such taxes. ; . Fraud is a question of fact to be determined on the basis of the entire record. , affg. , cert. denied , cert. denied . Fraud will never be presumed. However, fraud can seldom be proved by direct proof of the taxpayer's intention; *22 therefore, fraud must be determined from the taxpayer's entire course of conduct and can, and usually must, be proved by circumstantial evidence. ; , affg. ; , affd. without published opinion . This and other courts frequently list various factors or "badges of fraud" from which fraudulent intent may be inferred, but such lists of various kinds of circumstantial evidence from which fraudulent intent may be inferred are nonexclusive. ;. The finder of fact must weigh all of the evidence in the record. While not a checklist, some of the factors this Court has considered as indicative of fraud are (1) understatement of income, (2) inadequate records, (3) implausible or inconsistent explanations *23 of behavior, (4) concealment of assets, (5) failure to cooperate with the tax authorities, (6) engaging in illegal activities, and (7) dealing in cash. (citing ). Understatement of income is indicative of fraud. Here, petitioner David Brownburg omitted from income the W-2 wage income he earned and received from General Devices, Inc. for the month of January 1986. However, he deducted as employee business expenses his meals and his motel lodging in Fort Worth, Texas, for the same period. During the year 1986, petitioner also deducted meals and lodging expenses while he was working in Michigan for two other employers. During all three employments he claimed his meal and lodging expenses as "away from home" expenses, the "home" allegedly being the Converse, Texas, house petitioner had rented from Colonel and Mrs. Stokes in September of 1985. Petitioner paid rent for only one month and occupied that house for only one month in the fall of 1985. During 1986, petitioner had no connection, business or personal, with the Stokes' Converse, *24 Texas, house. Petitioner's explanation of why he allegedly regarded the house in Converse, Texas, as his tax home was implausible and inconsistent. See supra note 3. That house had actually been rented to another party in December 1985 for a 1-year lease term. Petitioner claimed as traveling expenses "while away from home" his meals and lodging at various motels in Texas and Michigan in 1986. He knew that those motel rooms or motel apartment-units for which he claimed deductions were the only abode, residence, or "home" that he, his wife, and one or more of their children had during the relevant periods of 1986. [5] Petitioner, a well-educated individual with a degree in electrical engineering, had to know that those expenses were not employee business expenses or employee traveling expenses "while away from home", but were simply his nondeductible personal, living, or family expenses. *25 Finally, petitioner in both 1985 and 1986 executed several Forms W-4 certifying, under penalties of perjury, that he was exempt from Federal income tax. Those statements were false. As a result of petitioner's false Forms W-4, no Federal income tax was withheld from his wages. This factor is also indicative of fraud. ; ; . Based on the record as a whole and the Court's opportunity to observe petitioner as a witness, particularly his evasiveness in regard to where he and his family lived in 1986, the Court is satisfied that respondent has proved fraud on the part of petitioner David Brownburg by clear and convincing evidence. [6]
*26 However, we do not think respondent has proved fraud as to petitioner Sandra Knoelk. Fraud is not imputed from one spouse to another, and in the case of a joint return, as here, respondent must prove fraud on the part of each spouse. Sec. 6653(b)(3) (now sec. 6663(c)); , affd. ; . Mrs. Knoelk did not appear or testify at the trial. The only evidence in regard to her is the fact that she signed a joint return with her husband. There is nothing in the record to suggest that she knew about her husband's omitted income item. She did know that she and her husband did not live in the Converse, Texas, house at any time during 1986. However, other than the language of the printed Form 2106 itself, there is nothing in the record to suggest that she was aware of what expenses he was claiming as employee business expense. Nothing on the Form 2106 refers to the Converse, Texas, house. She may have known from the tax return itself that no Federal income tax was withheld *27 from her husband's salary. However, there is nothing in the record to suggest that she knew about the false W-4s he had filed with his employers. At best there is mere suspicion or surmise, which is insufficient. Respondent has not carried the burden of proving by clear and convincing evidence fraud on the part of petitioner Sandra Knoelk. To reflect the above holdings, Decision will be entered under Rule 155. Footnotes
1. The Form W-4 contained two boxes that read as follows: [] Last year I did not owe any Federal income tax and had a right to a full refund of ALL income tax withheld, AND [] This year I do not expect to owe any Federal income tax and expect to have a right to a full refund of ALL income tax withheld.
Petitioner, in his post-trial brief, proffered his purported interpretation of these sentences as follows: This was interpreted as meaning that all taxes that were not owed that is paid and that all taxes would not be owed or paid for the current year.
This explanation is gibberish. Petitioner is a well-educated individual who can read and understand simple declarative English sentences such as those quoted above. There is no ambiguity in the twice repeated phrase "any Federal income tax" (emphasis added). In 1985 petitioner had executed a similar Form W-4 claiming to be exempt from any Federal income tax and certifying that in the prior year (1984) he did not owe any Federal income tax. That statement too was false.↩
2. Petitioner's teenaged daughter and teenaged son lived apart from the parents at various times. However, whenever Mrs. Knoelk lived with petitioner, their 4- or 5-year-old daughter lived with them.↩
3. Petitioner's various contentions about alleged structural cracks in the floor of the kitchen and on the wall of the living room and the alleged infestation of fire ants in the Stokes' Converse, Texas, house are wholly irrelevant to the issues before the Court. The only relevant facts are that petitioner and Mrs. Knoelk did not live in, or pay any rent for, the Converse, Texas, house in 1986. Moreover, the Court did not believe the testimony of petitioner in regard to the alleged structural cracks and alleged infestation of fire ants, and found more credible Colonel Stokes' testimony to the contrary.↩
4. Since the "Zero bracket amount" was already built into the tax rates, only deductions in excess of the "Zero bracket amount" were properly deductible. The instructions on the face of the Schedule A itself, are shown by lines 24-26 of Schedule A, as follows: 24 Add the amounts on lines 5, 10, 14,
(24)
243.39
18, 19 and 23.
Enter your answer here
(Filing Status box 2 or 5, enter $ 3,670)
25 If you checked Form 1040(Filing Status
(25)
3,670.00
box 1 or 4, enter $ 2,480)
(Filing Status box 3, enter $ 1,835)
26 Subtract line 25 from line 24. Enter your answer
here and on Form 1040, line 34a. (If
line 25 is more than line 24, see the
(26)
3,426.61
Instructions for line 26 on page 22.). .
As the figures indicate, petitioner instead improperly subtracted line 24 from line 25.↩
5. The Court has confined its findings of fact and discussion to "the relevant periods of 1986", because the record is silent as to where petitioner worked and lived after July or early August of 1986.↩
6. The portion of the underpayment of tax attributable to the fraud for purposes of sec. 6653(b)(1)(B), as it read for the year 1986, is the underpayment attributable to the omitted W-2 wage income and attributable to the "away from home" business expense claim. The underpayment attributable to the business mileage claim, disallowed by the Court for lack of substantiation, is not attributable to the fraud. Similarly, the underpayment attributable to the claimed Schedule A itemized deductions is not attributable to the fraud.↩